CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
2/17/2023
LAURA A. AUSTIN, CLERK
BY: s/ C. Amos
      DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| PATRICIA MARIE DUDLEY, <br><br> *Plaintiff*, <br><br> v. <br><br> ROCKBRIDGE DSS, <br><br> *Defendant*. | CASE NO. 6:22-cv-00069 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

This matter is before the Court on Defendant Rockbridge County Department of Social Services' ("Rockbridge DSS") motion to dismiss. Dkt. 7. This case must be dismissed because Rockbridge DSS is immune from suit, the Court cannot overturn a state-court ruling as Plaintiff asks, and because Plaintiff has wholly failed to state a claim with respect to any remaining federal claims.

Background[1]

Plaintiff Patricia Marie Dudley alleges that, on December 1, 2022, her children were removed from their schools by Rockbridge DSS. Dkt. 2 ("Compl.") at 3. According to Plaintiff, Rockbridge DSS did not "discuss this with [her], do a home visit, or give [her] a chance to object" before they acted in removing her children from their schools. *Id.* at 4. Plaintiff also

---

[1] The complaint alleges these facts which the Court must take as true for purposes of this motion to dismiss. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 249 (2009). Since Plaintiff is proceeding *pro se*, the Court will liberally construe her pleadings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

alleges that Rockbridge DSS "permanently" "remov[ed]" her children from her care without telling her first. *Id.*

Plaintiff has brought this suit solely against Defendant Rockbridge DSS, claiming a violation of her due process rights under the Fifth and Fourteenth Amendments. *Id.* at 3.[2] She seeks "monetary relief" for the "emotional and mental distress this has caused [her]" and alleges she "got fired from [her] job" on account of the time she has had to spent on "court dates" associated with the case. *Id.* at 4–5.

Thereupon Rockbridge DSS filed a motion to dismiss Plaintiff's complaint. Dkts. 7, 8. In its motion to dismiss, Rockbridge DSS argued that Plaintiff's due process claim was barred by Eleventh Amendment immunity, Dkt. 8 at 3–6, and that Plaintiff's claims for discrimination and intentional infliction of emotional distress lacked sufficient factual allegations to state a plausible claim to relief, *id.* at 6–7.

In response, Plaintiff reiterated that "[o]n December 1, 2021, [she] got a phone call [her] kids were being removed from their schools[.]" Dkt. 10 at 1. Plaintiff asserts that she has had "several meetings since [her] children [were] removed," and that "the social worker admitted she didn't know the dates of anything that happened or what the full story was[.]" *Id.* In Plaintiff's telling, her children were only removed because of a risk of "domestic violence," but then "they"—without saying who—"admitted … [her children] were not in danger at the time of [their] removal[.]" *Id.* Plaintiff contends that her children have been adversely affected because they were removed from school, including losing "almost a whole month" of school, counseling services, among other things. *Id.* at 1–2. Plaintiff reiterates her allegation that Rockbridge DSS

---

[2] Plaintiff also states in her complaint, "I am also filing for discrimination (I have contacted the Ada [sic], governor, State & president." *Id.* at 4. To the extent she raises an ADA discrimination claim, she does not further elaborate on it.

violated her constitutional right to due process, and, for the first time, writes that it also violated the "Family First Prevention Services Act."³ *Id.* at 3–9. Plaintiff does not articulate how she believes Rockbridge DSS violated this Act. *See id.* At the end of her response, Plaintiff writes that she is "waiting on the state appeal decision for this" removal of her children from her care. *Id.* at 8. She also asks this (federal) Court to "overturn the decision of the lower [state] court and make an order to return [her] kids home immediately." *Id.* at 9. And she asks for a Court order that Rockbridge "stop harassing [her] and [her] family over the false reports" of negligent and child endangerment. *Id.*

In its reply, Rockbridge DSS reiterated its prior arguments (to which Plaintiff had not responded) and replied to several new arguments made in Plaintiff's opposition. Dkt. 11. First, Rockbridge DSS contends that "Plaintiff is quite literally asking this Court to interfere with state court proceedings and reverse a state court order," and that as such "Plaintiff's Complaint should be dismissed pursuant to the *Rooker-Feldman* doctrine," which "strips this Court of subject-matter jurisdiction" over an action to "review and reject the state court's order." *Id.* at 3. Second, Rockbridge DSS argues that Plaintiff failed to state a claim under the Family First Prevention Services Act because she "does not identify a specific private cause of action related to this Act nor does she specify how Defendant allegedly violated this Act." *Id.*

After the conclusion of briefing on the motion to dismiss, Plaintiff filed another "affidavit," in which she attached a decision of the Virginia Department of Social Services Appeals and Fair Hearings Unit. Dkt. 16. In the appeal decision, the administrative hearing officer considered "a complaint of physical neglect involving [Plaintiff], and her children …." *Id.* at 18. The hearing officer explained that, "[b]ased on the evidence gathered during the

---

³ *See* Family First Prevention Services Act, Pub. L. No. 115-123, 132 Stat. 232 (2018).

investigation, the Agency rendered a founded disposition of Physical Neglect, Level Two, against [Plaintiff] regarding [her children]." *Id.* The two principal grounds for that initial agency disposition were that: (1) Plaintiff had "knowingly exposed [her children] to violent behavior," because Plaintiff had welcomed her daughter's father back into her house, despite an "extensive history of domestic violence" with him; and (2) Plaintiff had "failed to adequately supervise" her children. *Id.* at 19. However, upon consideration of the evidence and arguments presented in the appeal, the administrative hearing officer first concluded that "the evidence does not support a finding that [Plaintiff] neglected her children by knowingly exposing them to violent behavior." *Id.* at 19. The hearing officer further found that the agency had failed to substantiate its claims regarding inadequate supervision, and thus "the evidence [was] insufficient to support the finding" in that regard, either. *Id.* Accordingly, the hearing officer concluded that "[t]he record and testimony do not contain a preponderance of evidence that [Plaintiff] physically neglected [her children]," and thus found "unfounded" the agency dispositions as to Plaintiff. *Id.* at 19–20.

Plaintiff reiterated that she was "asking … this court to overturn the decision of the [state] lower court and return [her] kids home immediately." *Id.* at 1. She also reiterated her request for "monetary relief" for loss of reputation, "for all the child support that was stolen from [her] from [her] kids being illegally removed," and for "an order" to Rockbridge DSS to "stop harassing [her] and [her] family once [her] children return home." *Id.* Rockbridge DSS responded with a motion asking the Court to strike the supplemental filing as a sur-reply filed without prior leave of Court. Dkt. 17. The motions are ripe for review.[4]

---

[4] Because the Court concludes that the material issues raised were adequately briefed and that oral argument would not aid in the decisional process, the Court determines that the matters can be resolved without oral argument.

Standard of Review

A motion to dismiss pursuant to Rule 12(b)(1) tests a district court's subject matter jurisdiction. "The burden of establishing subject matter jurisdiction rests with the plaintiff." *Demetres v. East West Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015). A court must dismiss a case where the court finds subject matter jurisdiction lacking. *Arbaugh v. Y&H Corp.*, 546 U.S. 514 (2006). "A [Rule] 12(b)(1) motion should be granted if, after engaging in any necessary fact-finding, the court determines that the movant is entitled to judgment as a matter of law." *Id.* (citing *Arbaugh*, 546 U.S. at 514).

"A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the claims pled in a complaint." *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019). It does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "This pleading standard does not require detailed factual allegations." *ACA Fin. Guar. Corp.*, 917 F.3d at 211 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Instead, "[t]o meet the Rule 8 standard and 'survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'" *Nadendla v. WakeMed*, 24 F.4d 299, 305 (4th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, *King*, 825 F.3d at 212. However, the Court need not "accept the legal conclusions drawn from the facts," or "accept as true

unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United. Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (internal quotes omitted).

<u>Reasoning</u>

At the outset, the *Rooker-Feldman* doctrine precludes Plaintiff from asking this Court to "overturn" a Virginia state court decision. *See* Dkt. 10 at 9 (asking this Court to "overturn the decision of the lower court and make an order to return [her] kids home immediately"); Dkt. 16 at 1 (same).[5] The *Rooker-Feldman* doctrine is derived from two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). It stands for the proposition that a federal district court "has no authority to review final judgments of a of a state court in judicial proceedings." *Feldman*, 460 U.S. at 482. This doctrine is motivated by the concern "that lower federal courts will not act as courts of appeals from state courts." *Burrell v. Virginia*, 395 F.3d 508, 512 (4th Cir. 2005). Although Plaintiff's allegations on the issue are not entirely clear, to the extent her complaint has directly challenged and sought to "overturn the decision of the lower court" of Virginia addressing the removal of her children from her care, the *Rooker-Feldman* doctrine precludes the Court from entertaining such relief, warranting dismissal under Rule 12(b)(1).

Plaintiff's claim that Rockbridge DSS has violated her due process rights pursuant to 42 U.S.C. § 1983, also fails. While the Eleventh Amendment to the U.S. Constitution "by its terms does not bar suits against a State by its own citizens," the Supreme Court "has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as

---

[5] The Court does not understand Plaintiff to be challenging the administrative decision of the Virginia Department of Social Services Appeals and Fair Hearings Unit that she provided to the Court, both because she expressly requested that this Court "overturn the decision of the lower *court*," Dkt. 10 at 9 (emphasis added); Dkt. 16 at 1 (same); and because the administrative decision was in her favor.

well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). It is also "settled that this protection extends also to state agents and state instrumentalities," or, "stated otherwise, to arms of the State and State officials," but that "Eleventh Amendment immunity does not extend to counties and similar municipal corporations." *Cash v. Granville Cnty. Bd. of Educ.*, 242 F.3d 219, 222 (4th Cir. 2001) (cleaned up). Thus, in determining whether Rockbridge DSS should be considered to be an "arm of the state" and thus entitled to sovereign immunity, the Court must "determine whether, under state law, the entity functions more like a county or municipality than like an arm of the State itself." *Kincaid v. Anderson*, No. 1:14-cv-27, 2015 WL 3546066 (W.D. Va. June 8, 2015) (cleaned up).

In Virginia "[s]tate law requires local departments of social services to perform their child welfare services subject to the direction of the State Commissioner of Social Services and in accord with regulations adopted by the State Board of Social Services." *Doe v. Mullins*, No. 2:10-cv-17, 2010 WL 2950385, at *1 (W.D. Va. June 22, 2010) (citing Va. Code § 63.2-319 (2007)). That "high degree of control exercised by the Commonwealth and corresponding lack of autonomy by local departments," support the conclusion that Rockbridge DSS "is properly characterized as an arm of the state, at least in its role of protecting children." *See id.* In *Doe v. Mullins*, the court held that Eleventh Amendment immunity similarly barred a plaintiff's constitutional claim pursuant to § 1983 against Wise County Department of Social Services. *Id.* Numerous other decisions in the Western District are to the same effect. *See, e.g.*, *Kincaid*, 2015 WL 3546066, at *3 (holding that plaintiff's due process claim pursuant to 42 U.S.C. § 1983 against Russell County Department of Social Services was barred by sovereign immunity); *Nelson v. Herrick*, 3:11-cv-14, 2011 WL 5075649, at *11 (W.D. Va. Oct. 26, 2011) (holding that, "[i]n considering the degree of state control prescribed … as well as the Virginia Code's treatment of social services organizations," that Albemarle County's Board and Department of

7

Social Services "are both arms of the Commonwealth of Virginia, at least when it comes to their role in protecting children, and they are therefore shielded from suit by sovereign immunity"); *see also Daley v. Ferguson*, No. 3:95-cv-304, 1995 WL 17955326, at *3 (E.D. Va. June 26, 1995) (same as to Hanover County Board and Department of Social Services).

In addition, sovereign immunity extends to any Virginia law "intentional tort claims arising out of the actions of any of the entity's agents," including the intentional infliction of emotional distress (or "IIED") claim. *See Kincaid*, 2015 WL 3546066, at *3; *Gedrich v. Fairfax Cnty. Dep't of Family Servs.*, 282 F. Supp. 2d 439, 474 (E.D. Va. 2003) (holding that "[a]s all of plaintiffs' claims involve the County's actions in the area of child protection, Fairfax County is entitled to the protection of sovereign immunity on all of plaintiffs' state tort law claims, including for intentional infliction of emotional distress); *cf. Niese v. City of Alexandria*, 564 S.E.2d 127, 132 (Va. 2002) (explaining that "[t]he doctrine of sovereign immunity is 'alive and well' in Virginia"); *Marcantonio v. Dudzinski*, 155 F. Supp. 3d 619, 632 (W.D. Va. 2015) (compiling cases for the proposition that "IIED claims are disfavored in Virginia").

Finally, to the extent Plaintiff has raised a discrimination claim under the ADA, or as to her claim for violation of the Family First Services Prevention Act, Compl. at 4; Dkt. 10 at 3–8; the Court finds that Plaintiff has failed to state a plausible claim to relief. *See Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"). But Plaintiff nowhere refers, develops or otherwise expounds upon her apparently stray reference to discrimination under the ADA, much less allege facts that, taken as true, would establish an entitlement to relief under the ADA. Similarly, Plaintiff nowhere describes how she believes that Rockbridge DSS violated the Family First Services Prevention Act. The "special judicial solicitude" that courts afforded to *pro se* litigants "does not transform the court into an advocate." *Weller v. Dep't of*

*Soc. Servs. for City of Baltimore*, 901 F.2d 387, 391 (4th Cir. 1990). Indeed, "[e]ven in the case of *pro se* litigants, [courts] cannot be expected to construct full blown claims from sentence fragments." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Because that is essentially what Plaintiff is asking for with respect to any ADA claim or claim under the Family First Services Prevention Act, the Court will dismiss those claims pursuant to Rule 12(b)(6) for failure to state a claim.

\*     \*     \*

For these reasons, the Court will grant Defendant Rockbridge DSS's motion to dismiss and dismiss Plaintiff's complaint, *without prejudice*, in an accompanying order to follow.

The Clerk of Court is directed to send this Memorandum Opinion to the parties.

ENTERED this __17th__ day of February, 2023.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE